UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-00137-KK-DFMx** | Date: | January 16, 2026 |
| Title: | **_Arsalan Firoozi Fallahi Firoozi v. Kristi Noem et al._** | | |

Present: The Honorable  **KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE**

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING in PART Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 4]**

## I.
## INTRODUCTION

On January 13, 2026, petitioner Arsalan Firoozi Fallahi Firoozi ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Kristi Noem, Todd Lyons, and Fereti Semaia ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed the instant Ex Parte Application for a Temporary Restraining Order ("TRO") ("Application"), seeking Petitioner's immediate release from custody and an injunction prohibiting Respondents from removing Petitioner to a third country without notice or an opportunity to be heard. Dkt. 4, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED in PART**.

## II.
## BACKGROUND

As alleged in the Petition and Application, Petitioner is a native and citizen of Iran. Pet. ¶ 1; App. ¶ 18. When Petitioner was nine months old, his father passed away in a car accident. App. ¶ 18. Petitioner was subsequently raised by his aunt and uncle. Id. Sometime thereafter, when

Petitioner was still a child, he entered the United States with his aunt and uncle as an asylum seeker. Id. Petitioner and his family members were granted asylum and resettled in Dallas, Texas, as lawful permanent residents. Id.

While living in the United States, Petitioner eventually came to suffer from substance abuse and addiction. Id. ¶ 19. In 2018, after being convicted of substance-related criminal offenses, Petitioner was detained in immigration custody and ordered removed by an Immigration Judge. Id. However, later that same year, ICE released Petitioner on an order of supervision ("OSUP"). Petitioner did not check in with ICE as required under the conditions of his OSUP after his release. Id.

On June 27, 2025, ICE re-detained Petitioner and placed him in custody at the Adelanto ICE Processing Center, where he remains today. Id. ¶ 20. In October 2025, at the direction of ICE officials, Petitioner spoke on the phone with an individual purporting to be a representative from the Consulate of Iran. Id. ¶ 23. During the call, the individual asked Petitioner if he had an Iranian passport or contact with family members in Iran. Id. Petitioner answered in the negative to both questions.

In November 2025, again at the direction of ICE officials, Petitioner met in person with an individual purporting to be a representative from the Consulate of Iran. Id. During the meeting, the individual asked Petitioner the same questions as from the October 2025 phone call, and Petitioner provided the same responses. Dkt. 4-3, Declaration of Arsalan Firoozi Fallahi Firoozi ("Firoozi Decl.") ¶ 6. While Petitioner agreed to cooperate in his removal by completing the required paperwork and attending interviews, Petitioner was not asked to complete an application for travel documents or take any other actions necessary to obtain a travel document. App. ¶¶ 23-24. Additionally, the purported representatives from the Consulate of Iran did not inform Petitioner that Iran would, in fact, issue a travel document for him. Id. ¶ 24. Rather, the representatives only communicated to Plaintiff that he would likely be removed to a third country if a travel document could not be obtained from Iran. Id.

Since re-detaining Petitioner, ICE officials have provided Petitioner with monthly written notices warning Petitioner of sanctions if he refuses to depart. Id. ¶ 21. These notices include instruction sheets listing actions Petitioner must take to assist ICE in obtaining a travel document. Id. However, these notices have inconsistently identified the actions that Petitioner must take to facilitate his removal. Id. Further, Petitioner has not met with an ICE official or been provided an interview with an ICE official to discuss his removal, explain the actions Petitioner must complete to facilitate his removal, or otherwise take any steps toward effectuating his removal. Id. ¶ 20. Additionally, ICE has not provided Petitioner with an application for an Iranian passport or other travel documents from Iran. Id. Indeed, ICE has not informed whether it intends to remove Petitioner to Iran or a third country, and Petitioner has received no updates as to ICE's progress in removing him. Id. ¶ 25.

On January 13, 2026, Petitioner filed the operative Petition, raising the following grounds for relief:

1. **Ground One:** Unlawful Detention, in violation of 8 C.F.R. § 241.13(i)(1) ("8 C.F.R. § 241.13(i)(1) Claim");

2. **Ground Two:** Unlawful Detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution ("Due Process Claim"); and
3. **Ground Three:** Unlawful Potential Removal to a Third Country, in violation of the Due Process Clause ("Third Country Removal Claim").

Pet. ¶¶ 23-27. Specifically, Petitioner argues (1) his detention exceeds the six-month removal period authorized under 8 C.F.R. § 241.13(i)(1); (2) there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future; and (3) to the extent Petitioner's detention is intended to facilitate his removal to a third country without notice and an opportunity to be heard, such a removal would violate his due process rights. Id.

On the same day, Petitioner filed the instant Application, seeking his immediate release from custody and enjoining Respondents from removing him to a third country without notice and an opportunity to be heard. App. at 19. In support of the Application, Petitioner submits a declaration from his counsel, dkt. 4-2; his declaration, Firoozi Decl.; and copies of the monthly notices ICE has provided to him since his re-detention, dkt. 4-4.

On January 14, 2026, Respondents filed an Opposition to Petitioner's Application. Dkt. 7, Opposition ("Opp."). In their Opposition, Respondents state: "At this time, Respondents do not have an opposition argument to present." Id. at 1.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

///

///

# IV.
# THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised serious questions regarding the merits of his Due Process Claim.[1]

### 1. Applicable Law

"Freedom from imprisonment . . . lies at the heart of the liberty" the Fifth Amendment's Due Process Clause protects. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. 8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal. Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A), (2)(A). After the 90-day removal

---

[1] Because the Court finds Petitioner is entitled to release from custody based on his Due Process Claim, the Court need not consider his 8 C.F.R. § 241.13(i)(1) Claim. See, e.g., Gharakhan v. Noem, No. 25-cv-02879-DMS-AHG, 2025 WL 3539161, at *2 n.1 (S.D. Cal. Dec. 10, 2025) (declining to consider an alternative claim that the respondents violated procedural regulations because the Court concluded petitioner demonstrated her removal is not reasonably foreseeable).

With respect to Petitioner's Third Country Removal Claim, there is insufficient evidence currently before the Court showing Respondents seek to remove Petitioner to a third country. For example, Petitioner does not present evidence of statements by ICE officials suggesting they are considering removal to a third country. See Delkash v. Noem, No. EDCV 25-01675-HDV-AGRx, 2025 WL 2683988, at *2 (C.D. Cal. Aug. 28, 2025) (stating ICE officers told the petitioner they planned to remove him to South Sudan); Nadari v. Bondi, No. CV 25-07893-JLS-BFMx, 2025 WL 2934514, at *3 (C.D. Cal. Sep. 3, 2025) (stating an ICE official informed the petitioner's counsel that an officer would decide where the petitioner would be removed). Similarly, Petitioner does not present evidence showing he cannot be removed to Iran, or of other similarly situated individuals who have been removed to third countries without notice. See, e.g., Delkash, 2025 WL 2683988, at *3 (noting the petitioner was granted withholding of removal to his home country); Esmail v. Noem, No. CV 25-08325-WLH-RAOx, 2025 WL 3030589, at *5 n.8 (C.D. Cal. Sep. 26, 2025) (noting the petitioner had an order deferring removal to his home country and therefore was "inherently at risk of removal" to a third country); Nguyen v. Scott, 796 F. Supp. 3d 703, 736-39 (W.D. Wash. 2025) (reviewing evidence concerning similarly situated individuals). Hence, without more evidence of potential removal to a third country, Petitioner fails to demonstrate a likelihood of success on the merits of his Third Country Removal Claim at this time. Accordingly, Petitioner's request for injunctive relief as to his Third Country Removal Claim is **DENIED** without prejudice. Nonetheless, the Court recognizes Petitioner's fears concerning third country removal, and Petitioner may present his claim in a renewed application if he obtains supporting evidence.

period, "the Government 'may' continue to detain a[] [noncitizen] who still remains here or release that [noncitizen] under supervision." Zadvydas, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). However, Section 1231(a)(6) includes an implicit limit on "a[] [noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." Id. at 689. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701.

After the six-month period, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. However, a noncitizen still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

The Ninth Court has held there is no significant likelihood of removal where "no country would accept the deportees, or the United States lacked an extradition treaty with their receiving countries." Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) (discussing Zadvydas). On the other hand, where the government introduces evidence showing that repatriation to petitioner's country of origin is routine and can be promptly effectuated, removal is foreseeable. Id.; see also Diouf v. Mukasey, 542 F.3d 1222, 1233 (9th Cir. 2008) (holding petitioner failed to show no significant likelihood of removal where ICE had twice arranged his removal but he was not removed solely due to his refusal to cooperate, and the absence of a definite end date did not alter the analysis).

   **2.   Analysis**

Here, Petitioner has shown good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

As an initial matter, as of the date of this Order, Petitioner has been in ICE custody for nearly seven months since his re-detention on June 27, 2025. App. ¶ 2. Including Petitioner's initial detention in immigration custody in 2018, Petitioner has been detained for over 270 days. Id.; see Nguyen, 796 F. Supp. 3d at 721 (finding the clock for calculating the presumptively reasonable six-month period under Zadvydas did not restart with each nonconsecutive detention). Hence, Petitioner's detention exceeds the presumptively reasonable six-month period under Zadvydas and continues to grow "more presumptively unreasonable" every day he remains in custody. Vaskanyan v. Janecka, No. EDCV 25-01475-MRA-ASx, 2025 WL 3050081, at *5 (C.D. Cal. July 18, 2025).

Further, Petitioner has provided ample evidence showing he will not likely be removed in the reasonably foreseeable future. As noted, despite Petitioner's willingness to cooperate, no ICE official has met with Petitioner to discuss his removal, explained the actions Petitioner must complete to facilitate his removal, or otherwise taken any concrete steps toward effectuating his removal. App. ¶¶ 20, 23. Additionally, ICE has not provided Petitioner with an application for travel documents or instructed Petitioner to complete such an application. Id. In fact, ICE has not

even told Petitioner to which country it intends to remove him or provided any documents or updates reflecting progress in his removal. Id. ¶ 25.

While various ICE officers have provided Petitioner with monthly written notices and instruction sheets informing him of actions he must take to assist ICE in his removal, these notices provide inconsistent instructions as to the actions required of Petitioner. See dkt. 4-4. For example, on July 17, 2025, Petitioner was provided an instruction sheet directing him to complete all but two actions on the checklist. Id. at 3. However, on August 17, 2025, Petitioner was provided an instruction sheet served by the same officer directing him to take one action that was unchecked on the July 17, 2025 sheet and indicating he was not obligated to take the two actions that were previously checked. Id. at 5. In the subsequent months, Petitioner was provided with instruction sheets alternatively indicating no actions were needed to assist in his removal, id. at 7, 10, or all actions on the checklist needed to be taken, id. at 12. Considered alongside the protracted length of Petitioner's detention, ICE's failure to communicate any details of Petitioner's removal strongly demonstrates he will not likely be removed any time in the reasonably foreseeable future. See Gharakhan, 2025 WL 3539161, at *2 (finding no significant likelihood of removal where the petitioner received "minimal communications regarding her detention status" and "did not have an answer as to when [she] will be removed"); Luu v. Bowen, No. EDCV 25-03145-MEMF-SPx, 2025 WL 3552298, at *7 (C.D. Cal. Dec. 11, 2025) (finding no significant likelihood of removal where it was unclear if or when a travel document would be issued).

To the extent ICE intends to remove Petitioner to Iran, Petitioner has raised serious questions as to whether such removal is possible, let alone likely. While Petitioner has spoken with individuals purporting to be representatives from the Consulate of Iran on two occasions, ICE has not provided him with an application for travel documents from Iran or otherwise directed him to take any steps to secure such documents. App. ¶ 20. Moreover, despite his willingness to cooperate in obtaining travel documents, these representatives did not inform Petitioner that Iran would in fact issue a passport or travel document for him. Id. ¶ 23.

Therefore, Petitioner has provided good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future and, thus, that his detention is unconstitutional. Because Respondents present no evidence or arguments to rebut Plaintiff's showing, see Opp., Petitioner has demonstrated a strong likelihood of success on his Due Process Claim. See Yok v. Marin, No. EDCV 25-03377-MWF-MAAx, 2026 WL 103976, at *1 (C.D. Cal. Jan. 8, 2026) (granting habeas relief where the respondents similarly failed to provide a rebuttal argument); Do v. Scott, No. C25-2187RSL, 2025 WL 3496909, at *5 (W.D. Wash. Dec. 5, 2025) (collecting cases finding no likelihood of removal where the respondents did not submit a request for travel documents). Accordingly, with respect to his Due Process Claim, the first and most important Winter factor weighs in favor of Petitioner.

**B.    LIKELIHOOD OF IRREPARABLE HARM**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms"

on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, as stated above, Petitioner's detention has become indefinite in violation of his constitutional right to due process. Hence, Petitioner is and will continue to be irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

**C.     BALANCE OF EQUITIES AND PUBLIC INTEREST**

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022).

Here, because Petitioner has demonstrated a likelihood of success on his constitutional claim, the balance of equities and public interest "tips sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

**V.
CONCLUSION**

For the reasons set forth above, the Court orders as follows:

1.     Petitioner's Application is **GRANTED in PART**;[2]
2.     Respondents are **ORDERED** to immediately release Petitioner from their custody;

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

3. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case; and
4. Respondents are **ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction. Petitioner may file a Reply **no later than ten (10) days from the date of this order**.

**IT IS SO ORDERED**.